UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KATHLEEN WARSHUN and LYNETTE TIGER,

                    Plaintiffs,  **MEMORANDUM OF**
     -against-  **DECISION AND ORDER**
                                                           13-CV-1018 (ADS)(GRB)

NEW YORK COMMUNITY BANCORP, INC.,
NEW YORK COMMUNITY BANK, JOSEPH
FICALORA, ROBERT WANN, WILLIAM
DISALVATORE, and CYNTHIA FLYNN,

                    Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Willoughby & Giordano**
*Attorneys for the Plaintiffs*
245 Hillside Ave
Williston Park, NY 11596
      By:   Ann Willoughby, Esq., Of Counsel

**Littler Mendelson P.C.**
*Attorneys for the Defendants*
290 Broadhollow Road
Suite 305
Melville, NY 11747
      and
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114
      By:  Amy Laura Ventry, Esq.
            James P. Smith, Esq.
            Robert M. Wolff, Esq., Of Counsel

**SPATT, District Judge.**

      On February 26, 2013, Plaintiffs Kathleen Warshun and Lynette Tiger (the "Plaintiffs") commenced this action against their employer New York Community Bank ("NYCB"), NYCB's parent corporation New York Community Bancorp Inc. ("Bancorp") (collectively the "Corporate Defendants") and four high-level employees of NYCB.

The Plaintiffs, whose employment was terminated by the Corporate Defendants as part of a mass workforce reduction of 250 employees, alleged (1) violations of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* ("the ADEA"); (2) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") and the New York State Human Rights Law, New York State Executive Law §290 *et seq.* ("NYSHRL"); (3) reverse racial discrimination in violation of Title VIII and the NYSHRL; and (4) failure to timely notify the Plaintiffs of the cessation of their employment in violation of the federal Worker Adjustment and Retraining Notification Acts, 29 U.S.C. §2101 *et seq.* ("the WARN Act") and its New York equivalent, New York State Labor Law §860 *et seq.*

Presently pending before the Court are (1) a motion to dismiss the complaint in part by the Defendants pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(5) for insufficient service of process and 12(b)(6) for failure to state a cause of action and (2) a cross-motion by the Plaintiffs pursuant to Fed. R. Civ. P. 15(a)(2) to amend the complaint. For the following reasons, the motion to dismiss and the motion to amend are each granted in part and denied in part.

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the original complaint and construed in a light most favorable to the Plaintiffs.

### A. The Parties

The Plaintiff Kathleen Warshun ("Warshun") is a Caucasian female of Polish descent whose date of birth is September 28, 1958, and was at all relevant times over the age of forty years. The Plaintiff Lynette Tiger ("Tiger") is a Caucasian female of German descent whose date of birth is June 11, 1969, and was at all relevant times over the age of forty years.

The Defendant Joseph Ficalora ("Ficalora") is the President and Chief Executive Officer of NYCB. The Defendant Robert Wann ("Wann") is the Chief Operating Officer of NYCB. The Defendant William DiSalvatore ("DiSalvatore") is the Director of NYCB. The Defendant Cynthia Lynn ("Lynn") is the Chief Administrative Officer of NYCB.

**B. The Allegations Specific to Warshun**

On or about September 13, 1995, Warshun was hired as a bank teller by Roslyn Savings Bank. In or about 2003, Roslyn Bancorp Inc., the holding company for Roslyn Savings Bank, was acquired by Bancorp. Warshun remained employed on a continuous basis at Roslyn Savings Bank/NYCB until her employment was terminated on October 13, 2011.

On April 1, 2004, Warshun allegedly sustained an injury in the course of her employment while performing her duties as a NYCB employee. In or about 2007, Warshun underwent spinal fusion surgery as a result of the aforementioned injury. Following the surgery, Warshun was restricted in her ability to climb stairs and lift objects.

In or about 2010, Warshan was, at her request, exclusively assigned to the drive-up banking facility located at 14 Conklin Street in Farmingdale, New York. From the time of the transfer until the termination of her employment, Warshun worked as a Financial Services Associate.

During Warshun's time at the drive-up facility, the manager of the Farmingdale branch was Lareyetta Fraser. In this role, Fraser evaluated Warshun's job performance. According to Warshun, her performance was never deemed to be poor or below acceptable levels. However, Warshun admits that she had a weakness in her ability to "cross sell" banking products – that is, to advise customers of additional banking services and products available to them. Warshun asserts that her opportunities to "cross sell" were "severely limited by the lack of direct contact

3

inherent in dealing with customers sitting outside the building in their automobiles, one to three lanes distance, with communication restricted by microphones and background noise." (Compl, at ¶55.)

Prior to October 13, 2011, Warshun received more than one written 30-day warning for a failure to reconcile money at the end of her shift. Subsequent to that date, an employee of NYCB who had worked with Warshun was arrested for stealing money from the bank. Warshun alleges that, prior to October 13, 2011, the Defendants were aware of the facts and circumstances leading to the other employee's arrest, "yet failed to rescind the warnings issued to Warshun and others who had failed to reconcile at times when the arrested employee had also been working in the branch." (Compl, at ¶59.)

On October 13, 2011, Fraser phoned Warshun and told her to report for a corporate meeting at the Woodbury branch at 11 a.m. At the meeting, Warshun and approximately 50 additional employees from various branches were advised that they were being terminated. Apparently no questions were answered. The assembled employees, including Warshun, were given a packet by representatives of Human Relations, which included a letter stating: "After reviewing the company's staffing needs, it has been determined that your position will be eliminated." (Compl, at ¶63.)

Warshun was 53 years old when terminated. In this regard, Warshun alleges that of the approximately 50 employees terminated at the Woodbury branch that day, the vast majority were Caucasian women over 40 years of age. According to Warshun, at no time prior to October 13, 2011 did the Corporate Defendants advise Warshun that a significant number of employee positions would be eliminated. Warshun alleges that, notwithstanding the Defendants' earlier representations that Warshun's position had been eliminated, immediately following her

4

termination new employees were transferred to and/or hired to work at the Farmingdale Branch. Warshun subsequently received a letter from Flynn stating that the terminations were objectively based on facts including her recent disciplinary history, the scores received in recent performance evaluations, branch audits, and special skills. After Warshun's employment was terminated, her position was allegedly filled by a younger, lower paid employee.

**C. The Allegations Specific to Tiger**

On December 2, 1996, Tiger was hired as a Sales Associate in the Bayshore supermarket branch of NYCB. She remained employed in one of NYCB's branches until her position was terminated on October 13, 2011. Over the course of her employment, Tiger was transferred to each new supermarket branch, for a total of approximately 13 such transfers, to assist in its opening and establishment. In 1999, Tiger was promoted to branch manager and transferred to the Brentwood branch. On July 2, 2004, Tiger was transferred to the West Babylon branch.

On January 28, 2009, following an audit of the West Babylon Branch, Tiger received a disciplinary warning for a purported failure to enforce certain bank policies.

On April 8, 2010, Tiger was issued a disciplinary warning following a complaint by a customer that the customer had been unaware that the West Babylon branch was scheduled to close early on Good Friday, April 2, 2010. The customer apparently arrived with a deposit within 2 to 3 minutes of the scheduled closing time of 3 p.m., while another customer was being serviced. The arriving customer asserted that Tiger refused to allow her to make a deposit, telling her to return in the morning. Tiger disputed this account, asserting that the customer arrived after the branch was already closed. Tiger, unaware that it was a large cash deposit, suggested that the customer use the ATM machine for the deposit. Tiger also denied telling the customer to "go ahead" and close her accounts.

5

In April 2011, Tiger was transferred to the North Babylon branch, allegedly because she had been at the West Babylon branch for too long. According to Tiger, at the time of the transfer, there were other branch managers who had been in the same location for a longer period of time than she had. Dissatisfied with the transfer, Tiger voiced her concerns to the Regional Manager Maureen Montalbano and Regional Executive Virginia Belling. Tiger alleges that she was then warned that she could be transferred to another branch, even farther from her home.

Tiger also asserts that, beginning in 2005, she made several requests for a title promotion from Assistant Treasurer to Assistant Vice President, and that Belling either denied or ignored these requests. Tiger insists that she complained to Belling and Human Relations about these denials. Tiger asserts that individuals with less experience and fewer qualifications than her were given the title promotion.

On October 13, 2011, while Tiger was on a two-week vacation, she received a telephone call from Belling, who advised her that she was being terminated for "low performance." Tiger was 42 years old at the time of her termination. Tiger contends that at no time prior to her termination did the Corporate Defendants advise her that a significant number of employee positions would be eliminated. Rather, Tiger alleges, four months before the workforce reduction, at a meeting of bank managers in Westbury, New York, Ficolari and Wann made public representations and assurances that NYCB was profitable and that there would be no layoffs.

Tiger also asserts that, while NYCB purported to use a non-discriminatory methodology in deciding which employees would be laid off, the mass terminations disproportionately affected Caucasian women over 40 years of age. Tiger maintains that subsequent to the mass termination, the Defendants have offered and continue to offer its current employees incentives

to actively recruit new hires for various positions previously held by the Plaintiffs and other employees terminated on October 13, 2011. Also, Tiger alleges that subsequent to the mass termination, the Defendants have listed career opportunities on-line, including positions previously held by the Plaintiffs and other employees terminated on October 13, 2011. After Tiger was terminated, her position was allegedly filled by a younger, lower paid employee.

**D. Procedural History**

On April 2012, Warshun filed a charge of discrimination with the U.S Equal Employment Opportunity Commission ("the EEOC"), New York Division, claiming violations of Title VII, the ADA, and the ADEA. Warshun also filed a charge with the New York State Division of Human Rights ("the NYSDHR") alleging discrimination on the basis of age and disability.

Similarly, in April 2012, Tiger filed a charge of discrimination with the EEOC, claiming violations of Title VII and the ADEA. Tiger also filed a charge with the NYSDHR alleging discrimination on the basis of sex and age as well as retaliation.

Those agencies rendered a determination that it was "not probable" that discrimination had occurred. On December 6, 2012, the EEOC issued separate Right to Sue Letters to the Plaintiffs, stating that they could file an action in federal court under Title VII, the Americans with Disabilities Act, 42. U.S.C. §12101, *et seq.* ("the ADA"), the Genetic Information Nondiscrimination Act, and the ADEA.

Less than 90 days later, on February 26, 2013, the Plaintiffs commenced this action. The gravamen of the complaint is that the Defendants acted in a discriminatory and unlawful manner with respect to the mass termination and improperly replaced these employees, including the Plaintiffs, with younger, less experienced individuals whose compensation would be

7

significantly less than those employees who had been terminated. In particular, the Plaintiffs allege violations of the ADEA, gender discrimination, and reverse racial discrimination in violation of Title VII and the NYSHRL, and violations of the federal WARN Act and its New York equivalent.

On April 26, 2013, the Defendants moved to dismiss the complaint as against the Individual Defendants for insufficient service of process and failure to state a claim. The Defendants also moved to dismiss the federal reverse discrimination claim as against all the Defendants for failure to exhaust administrative remedies.

On June 5, 2013, the Plaintiffs moved, pursuant to Fed. R. Civ. P. 15(a)(2), to add a cause of action on behalf of Warshun that alleged a violation of the ADA. Because the Defendants oppose the proposed amended complaint only to the extent the Plaintiffs seek to interpose an ADA claim against the Individual Defendants, the Court grants as unopposed the Plaintiffs' motion to amend the complaint to the extent the Plaintiffs seek to interpose an ADA claim against the Corporate Defendants.

## II. DISCUSSION

**A. The Motion to Amend**

Under Fed. R. Civ. P. 15(a), leave to amend a complaint should be "freely given when justice so requires." Id. Here, the Defendants have not answered the complaint; no discovery has been conducted; and no scheduling order has been issued. Therefore, the prejudice, if any, to the Defendants to permit the Plaintiffs to file the proposed amended complaint is non-existent.

"However, it is well established that leave to amend a complaint need not be granted when amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); Jones v. New York State Div. of Military & Naval Affairs, 166 F.3d 45, 50 (2d Cir. 1999) (holding that

"a district court may properly deny leave when amendment would be futile."). A proposed amendment would be futile when it would not survive a 12(b)(6) motion to dismiss. See Hunter v. Deutsche Lufthansa AG, 863 F. Supp. 2d 190, 202 (E.D.N.Y. 2012).

In this case, the Court denies the motion to amend as futile to the extent the Plaintiffs seek to interpose an ADA claim against the Individual Defendants. First, as explained later, the Court finds that the Plaintiffs failed to properly serve the Individual Defendants. Second, even if service were proper, the ADA claim against the Individual Defendants would fail as a matter of law. The ADA's prohibition against employment discrimination applies only to employers, employment agencies, labor organizations, and labor-management committees, 42 U.S.C. §12111(2), and not against individual employees. In this regard, the Court agrees with those courts in this Circuit that have held that there is no individual liability for employment discrimination under the ADA. See Harrison v. Indosuez, 6 F. Supp. 2d 224, 229 (S.D.N.Y. 1998)("The Second Circuit has not addressed whether employees may be held personally liable under the ADA; however, as Title VII and the ADA define "employer" identically, the Court's holding in (Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)) clearly supports the rejection of personal liability under the ADA as well."); see also Corr v. MTA Long Island Bus, 27 F. Supp. 2d 359, 369–70 (E.D.N.Y. 1998); Lane v. Maryhaven Center of Hope, 944 F. Supp. 158, 160–162 (E.D.N.Y.1996); Cerrato v. Durham, 941 F. Supp. 388 (S.D.N.Y. 1996); Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271 (S.D.N.Y. 1996).

## B. The Motion to Dismiss

1. As to the Individual Defendants

On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing

that service was sufficient. Khan v. Khan, 360 F. App'x 202, 203 (2d Cir. 2010); see also U.S. Flour Corp. v. Certified Bakery, Inc., No. 10–CV–2522, 2012 U.S. Dist. LEXIS 29896, at *7–9, 2012 WL 728227 (E.D.N.Y. Mar. 5, 2012) (plaintiff has the burden of proving proper service by a preponderance of the evidence). "Similar to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, in considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

Under Rule 4(e) of the Federal Rules of Civil Procedure, service may be effected on an individual by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1)-(2).

Based on the record before the Court, none of the Individual Defendants were served personally or at their respective residences. Rather, service was made at NYCB's Islandia branch. However, as that branch's assistant manager's uncontroverted affidavit indicates, there is no agent at that branch authorized to accept service on behalf of these individuals.

Pursuant to Rule 4(e)(1), the Plaintiffs may also effect service on the Individual Defendants by following New York law. Pursuant to New York Civil Practice Laws and Rules ("CPLR") 308(2), a natural person may be served by

10

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" . . . within twenty days of [the delivery].

N.Y. C.P.L.R. 308(2). "New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business." Velez v. Vassallo, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002) (internal quotations and citations omitted).

For the purpose of service of process, a defendant can have more than one "actual place of business." Id. at 325–26; see NY CPLR 308(6) (defining "actual place of business" to include "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business."); Gibson, Dunn Crutcher LLP v. Global Nuclear Servs. Supply, Ltd., 280 A.D.2d 360, 721 N.Y.S.2d 315, 317 (1st Dep't 2001) (finding an address to be defendant's actual place of business for purpose of service because defendant held it out as his business address and induced plaintiff's reliance by, among other things, receiving business mail at said address even though "defendant may have conducted business elsewhere at times"); Columbus Realty Inv. Corp. v. Weng–Heng Tsiang, 226 A.D.2d 259, 641 N.Y.S.2d 265, 266 (1st Dep't 1996) ("[I]n as much as appellant was an officer and co-owner of the business where CPLR 308(2) service was made, . . . it is not significant that she worked mainly from her house rather than the place of business.").

Here, the Individual Defendants, while high-level officials of NYCB, do not have offices in the Islandia branch; do not regularly come to that location; and do not perform their duties at that branch. Furthermore, even if the Islandia Branch qualified as the Individual Defendants'

11

actual place of business, the Court finds that there is no indication whatsoever that the summons and complaint were delivered to them at their actual place of business or to their respective residences, as is further required to effect proper service under CPLR 308(2).

In addition, the Court dismisses the federal antidiscrimination claims with prejudice because even if the Individual Defendants were properly served, Title VII and the ADEA, do not provide for individual liability; rather, only against the employer. Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) ("[W]e note that individuals are not subject to liability under Title VII.") (internal quotation marks omitted); Cherry v. Toussaint, 50 F. App'x 476, 477 (2d Cir. 2002) ("[T]he ADEA precludes individual liability.").

Similarly, the Court finds that the federal WARN Act does not provide for individual liability. The WARN Act is codified at 29 U.S.C. §§ 2101–2109. In general terms, it requires "employers" with more than 100 employees to provide sixty calendar days' advance notice of "plant closing" or "mass layoffs." The provisions of the WARN Act define "employer" to mean a "business enterprise." 29 U.S.C. § 2101(a)(1). Upon review of "the statute, regulations and legislative history," the Court is of the view "that Congress . . . intended a 'business enterprise' to mean a corporate entity – i.e. corporation, limited partnership, or partnership – not an individual." Cruz v. Robert Abbey, Inc., 778 F. Supp. 605, 609 (E.D.N.Y. 1991)(Spatt, J.) (citing Solberg v. Inline Corp., 740 F. Supp. 680, 685 (D. Minn. 1990)). Similarly, the New York Worker Adjustment and Retraining Notification Act ("NY WARN Act"), N.Y. Lab. Law § 860, *et seq.* also defines employer as a "business enterprise." Therefore, the Court finds that the New York WARN Act also does not provide for individual liability. Ferrer v. Citigroup Global Markets, Inc., 09-CV-5095 NGG JMA, 2011 WL 1322296, at *5 fn. 5 (E.D.N.Y. Mar. 31,

2011)("The New York WARN Act parallels the federal Act[, in that] . . . the terms of the relevant provisions are substantially similar.")

However, the Court does not make a similar determination with respect to the Plaintiffs' NYSHRL gender discrimination claim against the Individual Defendants because an individual may be liable for discrimination in violation of the NYSHRL as either an employer, N.Y. Exec. Law § 296(1), or as an "aider and abettor," id. § 296(6). Section 296(1) of the New York Executive Law prohibits an "employer" from discriminating based upon the "race, creed, [or] color" of an employee or job applicant. N.Y. Exec. Law § 296(1)(a). Individuals are liable as employers under Section 296(1) only if they have "an ownership interest," or if they "themselves, have the authority to 'hire and fire' employees." Gentile v. Town of Huntington, 288 F. Supp. 2d 316, 321 (E.D.N.Y. 2003) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)); see also Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984) (per curium) (holding that an individual is not liable under the NYSHRL as an employer unless he is "shown to have any ownership interest or any power to do more than carry out personnel decisions made by others"). Under the aiding and abetting provision of the NYSHRL, an employer can be held liable for an employee's discriminatory act if the employer encouraged, condoned, or approved it. Greene v. St. Elizabeth's Hosp., 66 N.Y.2d 684, 496 N.Y.S.2d 411, 487 N.E.2d 268 (1985). However, because service on the Individual Defendants was not properly effected, the Court declines to consider the merits of the Plaintiffs' NYSHRL gender discrimination claim against the Individual Defendants other than to dismiss that claim without prejudice.

## 2. The Corporate Defendants

The Defendants assert that the Plaintiffs' reverse racial discrimination claims should be dismissed because they were not raised in his EEOC Charge and therefore are barred for failure to exhaust administrative remedies. "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003). The Plaintiffs never explicitly raised racial discrimination claims to the EEOC.

A district court, however, may hear claims not in the original EEOC Charge if they are "reasonably related" to claims raised in the charge. Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). Claims will be reasonably related if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (citation omitted). In deciding whether claims are reasonably expected to grow out of the original charge, the focus is on the factual allegations made in the original charge. See id. The central question is whether the administrative complaint gave the agency "adequate notice to investigate discrimination on both bases." Id.

Generally, "[c]ourts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge." Harris v. American Protective Services of New York, Inc., 1 F. Supp. 2d 191, 195 (W.D.N.Y. 1998), citing Peterson v. Insurance Co. of N. America, 884 F. Supp. 107, 109 (S.D.N.Y. 1995); see Marshall v. New York City Bd. of Education, No. 07–4561–cv, 2009 WL 928083 (2d Cir. Apr. 7, 2009) (affirming district court's grant of summary judgment in favor of defendant on plaintiff's

religious discrimination claim, because plaintiff's claim of religious discrimination was not reasonably related to charge of race and gender discrimination); McKinney v. Eastman Kodak Co., 975 F. Supp. 462, 466 (W.D.N.Y. 1997) (motion to amend complaint to add claims of sex discrimination and Family and Medical Leave Act violations denied as futile where EEOC charge alleged only age discrimination and retaliation for complaint about age discrimination); Mathura v. Council for Human Services Home Care Services, Inc., No. 95CIV4191,1996 WL 157496 (S.D.N.Y. Apr. 2, 1996 (a sex discrimination claim is not reasonably related to a race discrimination claim), aff'd, 107 F.3d 3 (2d Cir. 1997), cert denied, 522 U.S. 829 , 118 S. Ct. 93 (1997); Nelson v. Cigna, No. 3:95CV557, 1995 WL 848514 (D. Conn. Dec.7, 1995) (race and sex discrimination claims not reasonably related to age and disability discrimination claims); Dennis v. Pan American World Airways, 746 F. Supp. 288, 291 (E.D.N.Y. 1990) (age discrimination claim under ADEA dismissed where plaintiff's EEOC charge asserted only racial discrimination); Kawatra v. Medgar Evers College of the City Univ. of New York, 700 F. Supp. 648, 654 (E.D.N.Y. 1988) (marital status discrimination claim not reasonably related to plaintiff's charges of sex and national origin discrimination with the EEOC); McPartland v. American Broadcasting Companies, Inc., 623 F. Supp. 1334, 1339 (S.D.N.Y. 1985) (plaintiff's age discrimination claim dismissed where her EEOC charge only mentioned sex discrimination, harassment, retaliation, and discriminatory discharge).

Here, in their EEOC charges, neither Warshun or Tiger checked off the box for race. The only reference to race in the EEOC charges were the Plaintiffs' respective self-descriptions as Caucasian, which, in the Court's view, is not sufficient to establish that the EEOC was put on notice of potential racial discrimination. While the Plaintiffs' claims arise out of the same conduct, the facts did not sufficiently "apprise the EEOC that another type of discrimination

claim lurks in the background." Alonzo v. Chase Manhattan Bank, 25 F.Supp.2d 455, 458 (S.D.N.Y. 1998). Accordingly, the reverse racial discrimination claims against the Corporate Defendants are dismissed with prejudice.

### III. **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED**, that the Plaintiff's motion to amend the complaint is granted as unopposed to the extent the Plaintiffs seek to raise an ADA claim against the Corporate Defendants; and it is further

**ORDERED**, that the Plaintiff's motion to amend the complaint is otherwise denied as futile; and it is further

**ORDERED,** as to the Individual Defendants, that the Defendants' motion to dismiss is granted to the extent the complaint is dismissed with prejudice except for the NYSHRL gender discrimination claim, which is dismissed without prejudice; and it is further

**ORDERED**, as to the Corporate Defendants, that the Defendants' motion to dismiss is granted to the extent the reverse racial discrimination claim is dismissed with prejudice.

**SO ORDERED.**
Dated: Central Islip, New York
August 1, 2013

                                                *Arthur D. Spatt*
                                                ARTHUR D. SPATT
                                                United States District Judge